```
 1                    UNITED STATES DISTRICT COURT
                       NORTHERN DISTRICT OF OHIO
 2                         WESTERN DIVISION

 3   UNITED STATES OF AMERICA,     )  Docket No. 3:10CR251

 4          Plaintiffs,            )  Toledo, Ohio

 5          v.                     )  January 10, 2011

 6   HOR AND AMERA AKL,            )  Bond Hearing

 7          Defendant.             )

 8   ------------------------------

 9              TRANSCRIPT OF BOND HEARING
            BEFORE THE HONORABLE JAMES G. CARR
10               UNITED STATES DISTRICT JUDGE

11

12   APPEARANCES:

13   For the Plaintiffs:   Justin E. Herdman
                           Thomas E. Getz
14                         Office of the U.S. Attorney
                           801 Superior Avenue, W
15                         Suite 400
                           Cleveland, Ohio 44113
16                         (216) 622-3965

17                         S. Elisabeth Poteat
                           U.S. Department of Justice
18                         950 Pennsylvania Avenue, NW
                           Washington DC 20530
19                         (202) 616-9822

20   For the Defendant:    Jeffrey J. Helmick
                           Helmick & Hoolahan
21                         1119 Adams Street
                           2nd Floor
22                         Toledo, Ohio 43604
                           (419) 243-3800
23
                           Sanford A. Schulman
24                         500 Griswold Street
                           Suite 2340
25                         Detroit, Michigan 48226
                           (313) 963-4740
```

```
 1
     Court Reporter:        Angela D. Nixon, RPR, CRR
 2                          1716 Spielbusch Avenue
                            Toledo, Ohio 43624
 3                          (419) 260-5259

 4   Proceedings recorded by mechanical stenography, transcript

 5   produced by notereading.

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1     COURTROOM DEPUTY: Case number 3:10CR251 United
2 States of America versus Akl. Matter called for a bond
3 hearing.
4     THE COURT: Okay. Mr. Herdman?
5     MR. HERDMAN: Good morning, Your Honor. How are
6 you?
7     THE COURT: And with you are?
8     MR. HERDMAN: Elisabeth Poteat, counter-terrorism
9 section of U.S. Department of Justice, and Tom Getz.
10     MR. 6789: Sanford Schulman appearing on Amera.
11     MR. HELMICK: Jeff Helmick for Hor Akl; however
12 we're here to implicate Mrs. Akl, and it's with the consent
13 of her counsel.
14     THE COURT: Record should show that the
15 defendants have requested that I modify intensely
16 restrictive conditions of release to allow Mrs. Akl to
17 visit with their children who are residing with Mr. Akl.
18 As we all are well aware, I have as a condition of release
19 required that the family -- the husband and wife, the
20 co-defendants, not live or reside together. The request is
21 that there be a five-hour window when both parents would be
22 available with the children, at least two of whom are high
23 school students.
24     MR. HELMICK: One in high school, Your Honor, one
25 in elementary school, one preschool.

1      THE COURT: Okay. For some reason I thought the
2 middle child was older and that the younger child was quite
3 younger. The government imposes that request. Do you wish
4 to be heard -- let me ask you, Mr. Helmick, do you wish to
5 be heard further?
6      MR. HELMICK: If I would be heard, it would only
7 be in response to their objection, which, as I understand
8 it, the government has been consistent, we certainly
9 understand their objection that the flight risk for either
10 or both of these defendants goes up when the two of them --
11 or if the two of them are together. And clearly that's
12 part of what we're proposing. However, we're not talking
13 about residing, we're talking about visitation. There
14 would certainly be a court-approved custodian present
15 during that period of time. Both can be on monitoring,
16 they're already on monitoring, both can remain or be on
17 monitoring, or we can even impose GPS monitoring if
18 necessary. And this window of time -- Judge, without
19 complicity, to put it quite bluntly, with a court-approved
20 custodian, their escape, they're not going to be able to
21 leave during this period of time. That risk may go up
22 overnight when the custodian is asleep if the two of them
23 are together in the same household and conspired to leave
24 at the same time. But in order for it to occur during this
25 window of time as we've proposed, which we think is a

1  reasonable accommodation under the circumstances, they
2  would -- they would have to have involvement and complicity
3  with court-approved custodian.  They would have to have the
4  resources available to them to effect an escape, and The
5  Court has their passports and driver's license.  They have
6  no personal immediate access to money of their own, which
7  they could use to help facilitate in this case.  And as The
8  Court is aware, there is a substantial amount of family,
9  parents, aunts, uncles, cousins and so forth that have been
10 posted in this case for both defendants that are at risk
11 and would be taken by this Court should they violate any
12 material term of conditions of release.  We think this
13 window, this opportunity is reasonable.
14         I'm frankly pleading this on behalf of my client
15 and his co-defendant's mental health as well as the
16 goodness and benefit of the children as well.  My client
17 does not have a great deal by the way of formal education.
18 Amera Akl does, and that's of great assistance to the
19 children completing homework assignments and other matters.
20 Frankly, Judge, as a high school student, he's somewhat
21 lost, and helping him with some of the assignments he has
22 in high school with regard to Advanced English.  The young
23 man is a good student, but he needs help.  We think this is
24 a reasonable accommodation which presents minimal risk of
25 what the government fears, and we urge The Court to grant

```
 1  it under these circumstances or under similar conditions.
 2              THE COURT:  Am I correct, though, that the two
 3  residents live relatively close, Your Honor?
 4              MR. HELMICK:  Yes, as the crow flies they're very
 5  close, but there's an expressway between the two, so
 6  practically speaking, it may be a mile between the two
 7  residents to get there in terms of streets.  It doesn't
 8  take terribly long.
 9              THE COURT:  Why doesn't somebody pick the
10  children up and take them over --
11              MR. HELMICK:  Judge, they can, to the extent that
12  we can spare another body or someone who might otherwise be
13  a custodian.  It's certainly possible to get them over
14  there.  The practical problem that presents for us is that
15  Amera Akl's staying with her sister who has three children.
16              THE DEFENDANT:  Five.
17              MR. HELMICK:  Five children in a relatively small
18  home.  All things considered, where she's staying, it's a
19  bit hectic and chaotic between the other children, her
20  nieces' and nephews' schedule, getting them to practices,
21  tutors and other things in the afternoon and early evening
22  and also having a custodian present.  It's tough.
23              THE COURT:  She has her own soccer mom duties.
24              MR. HELMICK:  That's exactly right.  Soccer and
25  other matters that make this logistically difficult.  This
```

```
 1  also gives a break to a primary custodian in her sister and
 2  her family during the afternoon and early evening to get
 3  those things done that they need to do with their family,
 4  which I'm sure include homework, soccer, as The Court
 5  mentions, or so forth, it gives that break or window or
 6  opportunity to everyone in the days and reduce some of the
 7  strain on the custodians, on her sister's household during
 8  that period of time.  She would, of course, return there in
 9  the early evening and be there for the remainder of the
10  night on electronic monitoring as she has been.
11            And again, Judge, as far as I know there haven't
12  been any problems with arrangements that have been made and
13  supervision that's occurred so far, but I defer to
14  Mr. Miller on particulars.
15            THE COURT:  So do I.  Any problems or issues?
16            PROBATION OFFICER:  Not at this time, no, Your
17  Honor.
18            THE COURT:  Have there been at all?
19            PROBATION OFFICER:  No, Your Honor.
20            THE COURT:  Sir.
21            MR. HERDMAN:  Good morning, Your Honor.  I will
22  be brief as well.  I guess Mr. Helmick did want to be heard
23  on the motion.  The government's position on this is we've
24  tried to be consistent throughout.  And, again, we're not
25  insensitive to what I think is the fundamental issue here,
```

1  which is the needs of the Akl children. I'm a little
2  concerned because I think in Mr. Schulman's motion that was
3  filed, as well as Mr. Helmick's, I think what may be the
4  overriding issue here is the notion of the custodians being
5  overburdened or overtaxed. And again, I made this point
6  with Mr. Schulman's motion, and I'll make it again. These
7  custodians willingly agreed to serve in this capacity, took
8  this responsibility on. And it seems that as the months
9  have gone by, that they realized that this was a little
10 bit -- they bit off a little bit more than they could chew,
11 is what's going on here. And I'm not sure to the extent
12 how much that custodial problem is driving this as opposed
13 to the actual needs of the children. As far as the
14 children are concerned, I will concede that there are some
15 concerns that can probably be addressed through a court
16 order. But the bottom line is this, the motion, I think,
17 doesn't really address what it is that Mr. Helmick says the
18 children need, which is they need access to their mother,
19 both for help with their homework, scholastic assistance as
20 well as just --
21        THE COURT: Maternal --
22        MR. HERDMAN: Exactly, Your Honor. So to that
23 extent, they have contact with their father every day. As
24 Mr. Helmick said, that residence, in terms of miles, is
25 about a mile away. One of the alternatives that we had

1  suggested was that Mr. Akl could actually leave the
2  residence for those five hours a day if that's, indeed, how
3  much time is needed here.  But there are other potential
4  alternatives as well that I just, quite frankly, maybe
5  don't have the creativity to think of.  It seems like an
6  incredibly generous amount of time to ask for, 25 hours a
7  week seems like a lot of time to address these concerns.  I
8  also don't see the need for Mr. Akl to be present when
9  Mrs. Akl is there to assist the children.  And I also don't
10  know if The Court's inclined to grant the motion wholesale
11  or would consider some other alternative.  I'm just not
12  quite sure.
13              THE COURT:  My mind is entirely open.  That's why
14  I had this session.  I mean, this is not just a, you know,
15  let's go through the motions, but by the way, guys, this is
16  what I'm going to do.  That's why I had you all come here.
17              MR. HERDMAN:  But the government's fundamental
18  concern has always been that the risk of flight increased
19  substantially when Mr. Akl was released.  That would allow
20  both the defendants, I don't think there is a high
21  likelihood of them fleeing.  When Mr. Akl was released, I
22  believe that risk of flight went up.
23              THE COURT:  I would agree.
24              MR. HERDMAN:  That would essentially make nullity
25  of the previous motions, one of them would be that the

1  defendants have limited contact, and the fact that you
2  reiterated that when you denied Amera Akl's motion to
3  cohabitate with Hor.  And in our position, this is
4  essentially the same motion that's already been made, just
5  maybe framed differently so that there's less time that
6  they would actually come into contact.  But if these
7  defendants are serious about fleeing, five hours a day for
8  five days a week, that's a significant amount of time for
9  them to be able to plan, conspire, allowed to devise such a
10 way that they could flee.  And that remains a great concern
11 to the government here.  So we are -- we, again, we are not
12 insensitive to the needs of the children, but I -- we're
13 just trying to come up with sort of alternatives that would
14 address those needs as well as The Court's concerns about
15 the risk of flight that's increased here.
16         MR. HELMICK:  May I respond briefly, Your Honor?
17 Judge, first, this is not in any way driven by perceived
18 hardship by the custodians in the case.  They've been
19 cooperative and generous with their time, and I don't
20 believe I mentioned specifically at all in the motion, I
21 mention in the overall scheme of things that that's
22 secondary.  The primary goal here, and I'll be blunt with
23 The Court, is the emotional and mental health of my client,
24 his wife and their children.  And it extends beyond just
25 getting their -- the children's mother time with her, it

1  includes him as well.  We don't know how this case is going
2  to end up.  Both defendants face substantial prison
3  sentences.  But I would hate, at this point, to abandon the
4  concept this was a close family and has been for many
5  years.  I understand why this disruption occurred and why
6  it is necessary.  All we're asking for is a reasonable
7  accommodation for the children, for Mrs. Akl and for
8  Mr. Akl, and, yes, I'm including him specifically because I
9  think it's important that for a few hours a day, during the
10 school days only, that they see their parents together.
11 This is hard enough on a high school student who
12 understands the nature of the charges they're facing.  It
13 is a mystery to the younger children as to why their
14 parents are living apart.  And that's not a criticism of
15 the government's position or The Court's decision, it just
16 is what it is.  And it seems to me this is a reasonable
17 request.  And any attempt to flee, again, I go back to
18 involves collusion with court-approved custodians, whether
19 they're living apart or together, but I contend, Judge,
20 that the risk is lower if we're simply talking about the
21 afternoon into the early evening on monitoring with a
22 court-approved monitor and not overnight.
23          And for those reasons, we think this request is
24 reasonable, particularly given the time that's gone by
25 since the release of both defendants.

```
 1                  THE COURT:  Mr. Herdman, anything further?
 2                  MR. HERDMAN:  I think I've said what I have to
 3    say.
 4                  THE COURT:  I'm going to go ahead and grant the
 5    motion.  I was inclined not to, quite candidly, but I think
 6    Mr. Helmick pointed out, are the custodians here?
 7                  MR. HELMICK:  Many of them are, yes, Your Honor.
 8                  THE COURT:  To some extent you are -- the risk
 9    that you have accepted is being increased, the government's
10    correct.  I constructed the conditions of release
11    deliberately to limit, to the maximum extent possible, the
12    ability to plan flight.  I am increasing that risk
13    somewhat, and you should understand that that being so, if
14    you have any apprehensions that the consequences for you
15    that a flight were to occur or efforts were undertaken to
16    plan or prepare for flight or otherwise violate a material
17    condition of release, that you don't have to continue to
18    accept these responsibilities.  Do you understand that?
19                  CUSTODIAN:  Yes.
20                  THE COURT:  The records should show at least four
21    out of the five people nod their heads.  Sir, are you one
22    of the custodians, the gentleman on the far left?
23                  CUSTODIAN:  Yes.
24                  THE COURT:  Okay.  One condition that I will
25    impose, it occurs to me, is that, Mr. Helmick, if you will
```

```
 1   obtain and provide a copy of this transcript, and I want
 2   each of the people who have either posted property or who
 3   are serving as a custodian, or in any other way have
 4   interests that could be adversely effected in the case,
 5   there were a declaration of forfeiture to sign off and say
 6   that they concur in this changed arrangement.  And the
 7   change will not be implemented until that one sheet or
 8   multiple sheets, however you want to set it up is fine -- I
 9   assume that the government would not object to that aspect?
10           MR. HERDMAN:  No, that would be fine.  The only
11   thing I ask if we can just make a record of the custodians
12   that are present here in the courtroom.
13           THE COURT:  That's probably a good opportunity to
14   stand and state your full name for the record.
15           CUSTODIAN:  Akram Mahmoud.
16           MR. HELMICK:  And this is Amera's Akl's
17   brother-in-law, so she resides in his home.
18           THE COURT:  You've heard what I said, and you're
19   willing to continue to help her out?
20           CUSTODIAN:  Yes.
21           CUSTODIAN:  Ali Joseph, I'm Amera's father.  I
22   understand what you said, Your Honor.  I'm willing to do
23   what has to be done.
24           CUSTODIAN:  Akrum Mahmoud.
25           THE COURT:  Did you hear what I said?
```

```
 1              CUSTODIAN:  Yes.
 2              THE COURT:  I saw you nod your head up and down.
 3              CUSTODIAN:  Attay Mahmoud, Amera's sister,
 4   understand everything that was said.
 5              THE COURT:  I saw you nod your head too.
 6              MR. HELMICK:  And Amera's mother.
 7              CUSTODIAN:  Najah Joseph, Amera's mom, and I
 8   understand everything you said.
 9              THE COURT:  Mr. Helmick, will you do the court
10   reporter a favor of giving her the names?
11              MR. HELMICK:  I will, Your Honor.
12              THE COURT:  I would assume that it's not likely
13   the government will appeal, but Mr. Herdman, I would ask
14   that if you decide to do so, let me and counsel know
15   promptly so we know things that will be proceeding.
16              MR. HELMICK:  Just so I'm clear, Your Honor, I
17   gather you would like to do a letter of instruction and
18   explanation as well as a copy of today's transcript?
19              THE COURT:  If you don't want -- I was thinking
20   of the transcript because I hope maybe Angela will put the
21   periods in where they belong.  The main thing is I don't
22   want somebody, if there is a problem, and Lord knows I hope
23   there isn't.  Candidly, I don't think there's going to be a
24   problem.  On the other hand, I think the government's
25   concerns, which I do share, I think I have to share, and I
```

```
 1   have to respond to those, that if worse comes to worse, I
 2   do not want to, but have the ability to levy upon the
 3   property or to issue show cause orders against custodians
 4   and who may appear to have been at fault or in any other
 5   way to be confronted in an effort to impose sanctions as a
 6   result of the forfeiture -- oops, wait a minute, you
 7   changed things material to me, if I'd known about it, I
 8   wouldn't have hung around.
 9              MR. HELMICK:  Fair enough, Your Honor.
10              THE COURT:  So whatever you want to talk to Mr.
11   Herdman, whatever seems to work so that there's a
12   confirmation of the continued willingness to maintain
13   whatever circumstances may be with regard to each of the
14   people who are signatories to these obligations.
15              MR. HERDMAN:  Your Honor, I think that's an
16   important point with respect to the surers, I think the
17   only thing I would ask, would this order go into effect
18   before those surers are notified?
19              THE COURT:  No, I want them to sign off first.
20              MR. HELMICK:  May I offer this as a possibility,
21   if I were to have a conversation personally with each of
22   them to explain what occurred today and then filed
23   something with the court?
24              THE COURT:  I'd rather have it signed off on.  Is
25   there a problem in that regard?  If the people are not
```

```
 1  available --
 2          MR. HELMICK:  I'm not sure or not.
 3          THE COURT:  If that's a problem, talk to Mr.
 4  Herdman and let me know.  I don't want that to get in the
 5  way.  I'll see --
 6          MR. HELMICK:  I don't anticipate a problem.
 7          THE COURT:  No, but if somebody's out of the
 8  country or whatever, they're probably accessible by e-mail
 9  or your representation pending their return.  That's fine.
10  But I don't want -- although I know full well you would
11  fulfill that obligation thoroughly, none the less, I want
12  the individuals to sign off.
13          MR. HELMICK:  Understood, Judge.  Thank you.
14          THE COURT:  Anything further from the government?
15          MR. HERDMAN:  No, Your Honor.  Thank you.
16          THE COURT:  Mr. Schulman?
17          MR. SCHULMAN:  No, Your Honor.
18          THE COURT:  That will conclude this proceding.
19          MR. HELMICK:  Thank you, Judge.
20
21
22
23
24
25
```

```
 1                    C E R T I F I C A T E
 2
 3          I certify that the foregoing is a correct transcript
 4   from the record of proceedings in the above-entitled matter.
 5
 6   s:/Angela D. Nixon
 7   ---------------------------              -----------
 8   Angela D. Nixon, RPR, CRR                Date
```